[No. 35952. Department One. March 1, 1962]

THE B-LINE TRANSPORT CO., INC., *Appellant*, v. ANTON POITEVIN *et al.*, *Defendants*, V. O. STRINGFELLOW & ASSOCIATES, *Respondents*.*

* Reported in 369 P. (2d) 310.

*Torbenson, Thatcher & Stevenson,* for appellant.

*Keith Winston & Repsold (E. Lawrence White,* of counsel), for respondents.

WEAVER, J.—Plaintiff corporation, having secured a default judgment for $2,510.98 against defendant, had a writ of garnishment served on V. O. Stringfellow and Associates on December 1, 1959. Plaintiff now appeals from a judgment dismissing the writ upon payment by the garnishee of $75 ($200 less $125 attorney fees allowed garnishee).

The garnishee was the prime contractor of a housing project at the United States Naval Air Station, Whidbey Island, Washington; defendant was a subcontractor of the garnishee.

RCW 7.32.130 provides, in part:

"From and after the service of such writ of garnishment, it shall not be lawful for the garnishee *to pay to the defendant any debt* or to deliver to him any effects, . . ." (Italics ours.)

Thus, the crux of the statute, in so far as applicable to the instant case, is payment ". . . to the defendant of any *debt* . . ."

The garnishee's answer having been controverted, the court, after trial on the merits, entered finding of fact No. 3, to which no error is assigned. It reads:

"That according to the evidence introduced at the trial of this cause, upon the date of service of the Writ of Garnishment herein and thereafter, to and including the date of the serving and filing of the Answer of the Garnishee

Defendant herein, the garnishee defendant was not indebted to the defendants in any amount, but on the contrary at and during such time the defendant was in fact indebted to the garnishee defendant in an amount of approximately $18,000.00."

Plaintiff (appellant) urges that the garnishee is liable, at least to the extent of $1,929.45, because of a certain transaction occurring December 2, 1959, the day after the writ of garnishment was served; and cites, in support of its contention, *Lemagie v. Acme Stamp Works*, 98 Wash. 34, 167 Pac. 60 (1917), and *Fryer & Co. v. Thompson*, 14 Wn. (2d) 141, 127 P. (2d) 408 (1942).

 The prime construction contract between garnishee and the Department of the Navy provides:

"All mechanics and laborers employed or working directly upon the site of the work will be paid unconditionally *and not less often than once a week* . . . regardless of any contractual relationship which may be alleged to exist between the eligible builder [defined in the contract as the prime contractor, the garnishee in the instant case] or subcontractor and such laborers and mechanics; . . ." (Italics ours.)

To guarantee his performance, as prime contractor, garnishee had posted a $1,553,174 surety bond that defines a claimant

" . . . as one having a direct contract with the Principal or with a subcontractor of the Principal who has furnished labor, material, or both, in the prosecution of the work provided for in the Contract and who has not been paid in full therefor. . . ."

Plaintiff (appellant) does not assign error to the finding of the trial court that

" . . . the garnishee defendant had an immediate and direct obligation for the payment of all persons who furnished labor to the defendant subcontractor . . ."

The trial court found, and the record supports its finding, that prior to December 1, 1959,

" . . . the garnishee defendant as prime contractor had, in effect, taken over the work of the defendant subcontractor for the purpose and to the extent of paying the

immediate and direct obligations of *the prime contractor* to those persons furnishing labor upon such subcontract work; . . ." (Italics ours.)

December 2, 1959 (the day after service of the writ), pursuant to the above procedure, the garnishee made a check for $1,929.45 payable to defendant and the Everett Trust and Savings Bank for deposit in a payroll account. His secretary disbursed the money to defendant's employees for work performed on the project. Garnishee's accountant testified that garnishee had a "payroll to substantiate this balance of $1,929.45, an actual payroll; . . ."

Subsequent to trial, garnishee's counsel discovered, for the first time, that defendant subcontractor was listed on the payroll for the week ending December 1, 1959, and had received $200 from the fund deposited in the payroll account.

■ We conclude, as did the trial court, that garnishee did not pay ". . . the defendant any debt . . ." (except for the $200 to which we have referred) after service of the writ of garnishment, for the disputed funds were paid only on garnishee's immediate and direct obligations, not on a debt due defendant. By his writ of garnishment, plaintiff cannot obtain a better right against the garnishee than defendant had at the date of the garnishment. Defendant had no right to the $1,929.45. *Mercantile Ins. Co. of America v. Jackson*, 40 Wn. (2d) 233, 235, 242 P. (2d) 503 (1952).

The cases cited by plaintiff do not detract from this conclusion, for they are not apposite.

In *Lemagie v. Acme Stamp Works*, 98 Wash. 34, 167 Pac. 60 (1917), defendant, an officer and employee of the garnishee, had overdrawn his salary account with garnishee in the sum of $368.32 on the date the writ of garnishment was served. Thereafter, and before answer, the garnishee paid defendant $213.95 salary. This court affirmed judgment against the garnishee for $113.95 (the amount of the payment less defendant's statutory exemption for personal services), saying:

". . . The garnishee admitted its indebtedness to the defendant by paying to him, after the service of the writ,

the sum of $213.95. This must be construed as a waiver on the part of the garnishee of any right on its part to balance the account between it and the defendant as of the date of the issuance and service of the writ. . . ."

The decision is authority for impounding the $200 paid defendant in the instant case, but not for impounding the funds paid by garnishee on his immediate and direct obligation to pay all laborers working on the project.

The same rationale distinguishes *Fryer & Co. v. Thompson,* 14 Wn. (2d) 141, 145, 127 P. (2d) 408 (1942), from the instant case.

Defendant had contracted to build a house for garnishee. At the time plaintiff's writ of garnishment was served, defendant was in such financial straits that he could no longer pay for labor and materials. After service of the writ and before answer, garnishee voluntarily paid nonlienable claims against defendant totaling more than the amount of plaintiff's judgment. In affirming plaintiff's judgment against garnishee, the court said:

"Manifestly, it was not necessary for appellant [garnishee] to pay such claims to protect his property from lien encumbrances, and there was no provision in his contract authorizing him to pay the contractor's [defendant's] common creditors for materials furnished in the construction of the building . . . in so far as the determination of his [garnishee's] liability under the writ of garnishment is concerned, he thereby, in effect, acknowledged his indebtedness to the contractor (defendant) . . ."

There is no such acknowledgment in the instant case. The check to defendant and the Everett Trust and Savings Bank for deposit in a payroll account was not a payment upon a debt due defendant, for none existed under his contract with garnishee, but was in satisfaction of garnishee's direct obligation to pay laborers working on the project.

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.

May 18, 1962. Petition for rehearing denied.